## Springfield Marine Bank v. Mitchell.

1. *Questions of Fact—Verdicts—Weight of Testimony.*—Whether the contention of a party litigant is sustained by the facts and circumstances is a question for the jury, and their conclusions should stand unless the court can see that they are manifestly against the weight of the evidence.

2. *Banking—Payment of Checks—Absence of Funds.*—The mere fact that checks drawn upon a bank upon previous occasions when the drawer had not funds on deposit were paid, will not commit the bank to the payment of the party's checks indefinitely.

3. *Banking—Liability to Pay Checks of Parties Having no Funds on Deposit.*—In a controversy over the liability of a bank to pay the check of a person having no funds on deposit, it is shown that the relations existing between, and the course of dealing pursued by the bank and the party drawing the check, were not merely such as pertain to the business of banking, but were sufficient to induce a person taking such check to accept it, believing that the bank was liable for its payment; the liability of the bank to pay the check becomes a question of fact for a jury to determine under all the facts and circumstances of the case.

4. *Evidence—Admission of Incompetent, Not Always Prejudicial.*— The admission of testimony not essential to a right of recovery, but not at all prejudicial to the opposite party, is not sufficient cause for setting aside a verdict.

Memorandum.—Appeal from a judgment for the plaintiff rendered by the Circuit Court of Sangamon County; the Hon. JACOB FOUKE, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892, and affirmed. Opinion filed October 31, 1892.

The opinion of the court states the case.

### APPELLANT'S BRIEF.

It will be observed that two distinct grounds of recovery are presented as follows: (1) On the check drawn by W. H. Holly on defendant bank. (2) For the price of two horses alleged to have been sold by the plaintiff to the defendant, through W. H. Holly, alleged to have been the agent for the bank, and authorized to purchase the horses for the bank. In order to recover on the check, it devolved upon the plaintiff to establish by the evidence that at the time the check was presented for payment at the defendant bank, W. H. Holly had money in the bank subject to check with which to pay the same. Coates v. Preston, 105 Ill. 470; International Bank v. Jones, 15 Brad. 594.

BROWN, WHEELER & BROWN, attorneys for appellant.

### APPELLEE'S BRIEF.

We do not say the check was actually paid, but we insist that it was accepted by the bank, and whether a balancing of accounts between Holly and the bank would show in his favor or against him, can make no difference under the facts

of this case. He had funds on deposit when the check was presented, sufficient to meet it. The very money the horses sold for was put in the bank to pay the check. The bank had no right to apply it to his other indebtedness secured by mortgage or otherwise, except by his direction before the presentation of the check. Wood et al. v. M. S. L. & T. Co., 41 Ill. 267; Ridgely Nat'l Bank v. Patton et al., 109 Ill. 479.

PATTON & HAMILTON, attorneys for appellee.

OPINION BY THE COURT.

The appellee recovered a judgment against the appellant bank upon a check drawn upon it by one W. H. Holly, payable to A. E. Weir, and by him assigned to the appellee.

It is not contended that the drawer of the check had funds in the bank with which to pay the check, but the right of recovery, and the liability of the bank is predicated upon other grounds. The first of these is that an arrangement existed between the bank and Holly that the bank would pay his checks, which were given in payment for horses, such fact to be shown by a memorandum on the face of the check; that the appellee had notice of such arrangement, and upon the faith of it sold Holly two horses and accepted the check in payment.

The other alleged ground of liability is that Holly was acting as the agent of the bank in the purchase and sale of horses, and as such agent purchased the horses from the appellee and gave the check in payment.

Aside from an exception taken to the ruling of the court upon the admissibility of testimony, which will be hereafter noticed, the only question presented by the record is whether the evidence is sufficient to establish either of the alleged grounds of liability.

A brief statement of the evidence seems necessary. A. E. Weir, who was in the employ of Holly, testified that some months before the transaction in question, Holly

" failed " for a few days, and after that always wrote upon his check upon the bank, the number of horses for which it was given. That upon one occasion, the under officials of the bank declined to pay such a check until directed to do so by the president, who, when called, ordered the check paid, and said to the witness that he " paid for stock after it was in the barn."

The horses of the appellee were purchased on the 9th day of April, 1890, by Weir for Holly, and paid for with a check drawn by Holly upon the appellant bank, upon the face of which was written by Holly " two horses."

Holly was then unable to transact out-door business because of an illness which proved fatal on the 11th day of the same month. The check was drawn payable to Weir, who sent by Holly to the home of the appellee to buy the horses. Weir testifies that he told the appellee that the words " two horses " were upon the check in accordance with some arrangement between Holly and the bank.

Appellee deposited the check in a bank at Ashland, where he resides, and it was presented to the appellant bank for payment on the 11th day of April, 1890, and its payment refused on that day at or about the hour of the death of Mr. Holly. It further appeared from the evidence, that on the 6th day of April of the same year, Holly executed and delivered to the president of the appellant bank, for the benefit of the bank, a bill of sale of all his horses, cows, carriages, a buggy, harness, etc., etc., all contained in his barn. This bill of sale was not recorded until after the death of Holly nor was there any change made during the life of Holly in the possession or control of the property it purported to convey. The horses bought of the appellee were brought into his barn on the 9th of April, kept until the 10th and then sold, and the money received for them given by Weir to the bank and by it credited to Holly. Appellee's check was presented on the next day thereafter and payment refused.

After Holly's death the bill of sale was recorded and possession of such of the property as was in the barn taken.

The appellant bank contended and introduced evidence tending to show that there was no agreement or arrangement by which it was to pay Holly's check, whether given for horses or not, or whether so marked or not. That they had in the past occasionally paid his checks when he had no money in the bank, but only on special arrangements as to the particular check paid. That Holly was not buying horses for the bank nor was it interested in the slightest in his dealing with the appellee or others who sold to, or bought horses from him. That Holly was indebted to the bank largely for overdrafts and other matters and that the bank held to secure such indebtedness, the bills of sale before mentioned, certain policies on the life of Holly, and that one Smith was surety for a part of such indebtedness. That after applying the proceeds of the property mentioned in the bill of sale, the money received from the life insurance policies and from Smith, to Holly's credit, he was still indebted to them in a considerable amount.

This was the case presented to the jury. Whether the contention of the appellee was sustained by the facts and circumstances proven, was a question of fact for the jury, and their conclusion should stand, unless we can see that it is manifestly against the weight of the evidence.

It is evident, from the evidence, that the relations existing between, and the course of dealing pursued by, the bank and Holly were not merely such as pertain to the business of banking. It can not, therefore, be said that no liability could attach to the bank, except upon proof that Holly had funds on deposit to meet the check. The mere fact that checks drawn by him on former occasions were paid when he had no funds in the bank, would not commit the bank to the payment of his checks indefinitely. But the jury believed, from the evidence, that the bank, through its president, had agreed with Holly to pay such checks as he, in the course of his business as a dealer in horses, might draw in payment for horses, and that, in order that the bank might know that the checks were for such purchases, Holly was required to indicate that fact upon the face of

the check. The bank relied upon Holly to dispose of the horses and replace the money by depositing the proceeds of the sales in the bank. This had been the course of dealing in many instances, and the jury believed that it resulted from, and rested upon, an agreement between the bank and Holly. It was shown that the appellee parted with his horses and accepted the check in the belief that the payment of the check was thus provided for.

It was indisputably proven that the horses sold by the appellee to Holly, on the 9th of April, were sold on the 10th, and the money thus received, deposited in the bank on the same day. Appellee's check was presented on the next day. The position of the bank is that it had the right to apply the money thus received by the sale of the horses to the credit of Holly upon his general indebtedness to the bank, while, in the view of the jury, it was the duty of the bank, under the arrangement with Holly, to apply the money to the payment of the check given by Holly for the horses.

This view of the jury is correct, if the alleged agreement between the bank and Holly is proven. There is evidence tending to prove it, and we do not feel warranted in saying that it is manifestly insufficient.

The court allowed the witness Weir to state a conversation between himself and the appellee relating to the words "two horses" on the check when the horses were purchased of the appellee.

It was desired by the appellee to show that he had notice of the alleged agreement before parting with his horses and accepting the check. This evidence was admitted for that purpose.

We do not think that proof of such notice was essential to a right of recovery. If the agreement existed for payment of the check, the appellee was entitled to the benefit of it, whether advised of it or not.

We think it clear that the appellant was not at all prejudiced by this evidence, because the witness, before detailing the conversation with the appellee, had testified to all that

he knew concerning the alleged arrangement or agreement, and his statements to the appellee were neither as full nor as strong as his previous statements to the judge. The judgment ought, we think, to remain undisturbed, and it is affirmed.